An administrator brought, under Code Civ. Proc. § 2707 et seq., a proceeding for the discovery and delivery of assets of decedent. The evidence showed that decedent had received certain property under the will of her husband which gave her an estate for life, that the person in possession of the property had filed a claim against the estate, and the claimant, the administratrix, and the remainderman agreed on a settlement whereby the administratrix was to have the estate for life, and the remainder at her death was to be divided between the remainderman and the claimant. The claimant bought out the interest of the remainderman, and the testatrix had disposed of some of the property and turned over to the claimant, against whom the proceeding was brought, and her brother, all the assets she had received from the husband's estate. It did not appear that there were any creditors to whom she was indebted. *Held*, that the application for the possession of the property would be denied.

In the matter of the estate of Alinda Haniman, deceased. Proceedings by administrator to obtain discovery and delivery of assets alleged to be in the possession of one Pike. Application denied.

Charles R. Patterson, for petitioner Eugene Race.
Chambers & Finn, for respondent Byron Pike.

OSTRANDER, S. This is a proceeding by Eugene Race, the administrator of the deceased, under section 2707 et seq. of the Code to obtain from Byron Pike a discovery and delivery of personal property of deceased alleged to be in his possession.

Alinda Haniman died February 7, 1905, and the petitioner was duly

appointed and qualified as administrator of her estate on December 9, 1905. The petitioner gave due notice, including notice to Byron Pike, of an appraisal of the property of the deceased, which was appointed to be held at the late dwelling house of the deceased, on January 9, 1906. The petitioner alleged that the late dwelling house of the deceased where she died, in the town of Moreau, was owned by her at the time of her decease, and alleged, upon information and belief, reasonable grounds of which were given, that at her death she owned, or had in her possession there, certain live stock, farming implements, furniture, and other personalty worth several hundred dollars, and that upon her death said Pike took possession of said property and had since continued in possession thereof; that said Pike had shortly before her death induced the deceased to withdraw from bank several hundred dollars which she owned and which said Pike then deposited in his own name. The petitioner also alleged that said Pike had occupied the dwelling and premises of the deceased since her death and had taken possession of the said personal property of the deceased and refused to disclose any information as to said chattels; and that upon the day fixed for the appraisal of the effects of the deceased said Pike accompanied by a deputy sheriff of the county, met petitioner and the appraisers at the late dwelling of deceased, and refused to allow them to be or remain on the premises, and threatened to have the officer remove them by force unless they retired at once, and that, in consequence, petitioner could not inventory and appraise said personalty. The answer of said Pike alleged that he had been the owner of said real estate since July 10, 1905, and that Alinda Haniman never had any ownership thereof except a life estate which terminated on her death in February, 1905. The answer also denied that Alinda Haniman ever owned the personalty described in the petition and alleged that she was in possession thereof under a life estate created by the will of Aaron Haniman, her husband, which terminated on her death, and that said Pike was the owner of all the personalty in her possession.

The testimony of Byron Pike upon the examination showed that petitioner's decedent was the widow of Aaron Haniman, who died April, 1902, leaving a will, which was thereafter probated, by which he gave his property, real and personal, to his wife, Alinda Haniman, for life, and the remainder to Alzina Jackson. Byron Pike presented a claim against Aaron Haniman's estate and on September 9, 1902, an agreement was entered into between Alzina Jackson, Alinda Haniman, and Byron Pike to settle all differences between them regarding said estate. By this agreement it was provided that after the debts against the estate of Aaron Haniman had been paid and a cemetery lot paid for and headstone erected Alinda Haniman should "receive and enjoy all the property of the said Aaron Haniman during her natural life, and that all of said property remaining shall be applied to her support and maintenance during her life—that at her death whatever remains of the property of the said Aaron Haniman shall be divided," one-half to Alzina Jackson and one-half to Byron Pike. It was further provided that said Alinda Haniman might, whenever she deemed it advisable, transfer or trade the real estate for other real estate of equal or greater

value, and that said Alzina Jackson and Byron Pike "do hereby re-
lease and quitclaim all their right, title and interest in and to said
estate and do set over and assign all their right, title and interest in
said estate to the said Alinda Haniman for the better purpose of carry-
ing out the provisions of this agreement."

It also appeared from the examination that about two months before
the death of Alinda Haniman a cow, some furniture, and some money in
the bank, which were part of the Aaron Haniman estate, remained
undisposed of in the hands of Alinda Haniman. At this time Mrs.
Haniman and Byron Pike, who was her brother, lived together on the
farm late of Aaron Haniman, and that one Sylvester Sweet and his wife
kept house for them. This personal property was on the place. Mrs.
Haniman told Pike that she wanted to turn everything she had into
his hands, mentioning the cow, furniture, money, etc. She told Pike
that it belonged to him. That was all that took place. No papers were
drawn. It was all by word of mouth. With the exception of the
money, Pike sold all the property to Sweet, as he says, turned over to
Sweet the same as Mrs. Haniman turned it over to him, and it is all
gone from the farm now except the cow. As to the money, Pike says
Mrs. Haniman gave him her bank book and he drew it out of the South
Glens Falls Bank and deposited it in his name in said bank. After her
death he paid out some of it and the balance, $7.25, thereof, is still in
the bank in his name. After Mrs. Haniman turned over the property
to Pike he supported her till she died and paid funeral expenses for her
and paid for a nurse for her. He thus paid out all of the moneys ex-
cept $7 or $8. Subsequent to the death of Mrs. Haniman, Byron
Pike purchased the rights of Alzina Jackson in all the property.

Section 2710 of the Code of Civil Procedure provides that, if the facts
admitted by the witness show that he is in the control of property to
whose immediate possession the petitioner is entitled, the surrogate may
decree that it be delivered to the petitioner. If the witness admits hav-
ing the control of the property, but the facts as to the petitioner's right
are in dispute, the proceeding shall end, unless the parties consent to
its determination by the surrogate, in which case it shall be so de-
termined.

By the arrangement between Alzina Jackson, Alinda Haniman, and
Byron Pike, so much of the personal property in question as she might
reasonably use for her support and maintenance during her lifetime
vested in Mrs. Haniman, and the remainder of said property vested in
Alzina Jackson and Byron Pike. Terry v. Wiggins, 47 N. Y. 512;
Crozier v. Bray, 120 N. Y. 374, 24 N. E. 712. By the conveyance from
Alzina Jackson to Pike after the death of Mrs. Haniman, Pike took
whatever Alzina Jackson had in the property. By the arrangement
between Mrs. Haniman and Pike prior to her death there was either
a gift or sale of the property to Pike, or else whatever title Mrs. Han-
iman had therein remained in her until her death. It is not entirely
clear whether she sold the property to Pike in consideration of his
supporting her during her lifetime, or whether she attempted to make
a gift to him of the property. If she transferred it for sufficient con-
sideration by way of support, nursing, etc., she was acting within her

rights, and Pike acquired a title from her. If she made a gift of it to Pike, sufficient in form, but unauthorized, then the only persons who could complain would be either Alzina Jackson, or, possibly, creditors having a valid claim for support and maintenance of Mrs. Haniman. If the property remained undisposed of at the death of Mrs. Haniman, and there was no outstanding claim for her support, then it became the absolute property of Alzina Jackson and passed to Pike by her conveyance after the death of Mrs. Haniman.

Prima facie everything which remained unexpended at the death of Mrs. Haniman vested, not in her administrator, but in Alzina Jackson. To show any interest in this property it would be incumbent upon Mrs. Haniman's administrator to show, at least, that he represented creditors holding claims against Mrs. Haniman incurred for her support; that there were creditors having claims against her for other matters that would be insufficient to give her administrator any standing with reference to this property. And, while there was suggestion by the petitioner's counsel that claims for Mrs. Haniman's support were outstanding, there is no evidence or any hint of any such in the record. I think the record fails to disclose any such clear right to the property in question as would justify the order prayed for. Another fatal objection to the application as to all of the property, except, possibly, $7.25 in the bank, is the fact that it is not now in possession of Pike, but has been disposed of by him. Matter of Stewart, 77 Hun, 564, 28 N. Y. Supp. 1048.

Whatever remedies the petitioner may have in the premises by action, the case presented fails to disclose facts warranting the summary order for delivery of the property contemplated by the statute under which this proceeding is instituted. The application must be denied. It appearing that the petitioner was acting in good faith in the application, and that Mr. Pike was rather reticent concerning the facts upon which his refusal to permit the appraisal was based, the application is denied without costs.

Application denied, without costs.